State and John M. Bush, Harry L. Bush, James K. Stinson and Robert A. Dewess v. City of West Palm Beach.

193 So. 839

En Banc

Opinion Filed February 16, 1940

*Loftin, Calkins, Anderson & Scott,* for Appellants;

*Paul W. Potter* and *L'Engle & Shands,* for Appellee.

Per Curiam.—During a period of impatient anticipations of very great, rapid and continuous municipal growth,

the City of West Palm Beach, Florida, issued unduly large amounts of negotiable bonds bearing 5, 5½ and 6 per cent per annum interest, payable ·by taxation for public improvements and other municipal purposes. Interest payments soón became excessively burdensome. In an effort to obtain partial relief, the City on January 1, 1936, agreed with *consenting* bondholders to exchange for bonds of original issues an amount of refunding bonds equaling 75 per cent of the principal of each of the original bonds, 25 per cent of the principal being discharged and cancelled. The refunding bonds were to mature in 1961, and to bear interest for portions of that time at the rate of 2, 2½, 3, 3½, 4, 4½ and 5 per cent per annum, an average interest rate of 3½ per cent per annum during the life of the bonds. About 93 per cent of the outstanding bonds of the City were so exchanged. The holders of the remaining 7 per cent of the original bonds refused to make such exchange for refunding bonds, and various suits were instituted to compel the payments of the unexchanged original bonds at par and interest as they matured. This proved detrimental to the progress and welfare of the City, which then resorted to the Federal courts under the amended bankruptcy law of 1938 with a view to compelling the non-consenting bondholders to accept the refunding bonds as holders of 93 per cent of the original bonds had done. Later on, apparently conceiving difficulties that might be encountered in seeking relief in the bankruptcy court and being seriously hampered by suits to enforce payment· of the remaining outstanding original bonds at par as they matured which caused it grave and immediate financial stress, the City dismissed the proceeding in the bankruptcy court.

Resolutions for the issue of refunding bonds to exchange for the 7 per cent of unrefunded original bonds were

adopted by the City Commission, and the City brought proceedings under the statute, Section 5106 (3296) C. G. L., Section 30, Chapter 15772, Acts of 1931, to have validated authorized refunding bonds to be known as "Refunding Bonds, Series G," aggregating $1,439,000.00 bearing 3½ per cent per annum interest until paid, all such bonds maturing in 1961, to be exchanged at par for a like amount of the 7 per cent of unrefunded original bonds, the larger portion of which original bonds bear 5½ and 6 per cent interest per annum.

The State attorney answered for the State of Florida as contemplated by the statute, and a lengthy replication thereto was filed by the City. A bill of complaint was filed by Bush and others, taxpaying citizens of the City, to enjoin the issue of the refunding bonds, alleging in effect among other matters that the proposed issue of refunding bonds violate an agreement dated January 1, 1936, made with the assenting holders of the previously issued refunding bonds of the City exchanged for 93 per cent of the bonded indebtedness of the City.

The assenting bondholders canceled 25 per cent of the principal of the original bonds held by them. The agreement contains the following provisions:

"Section 902. The City will not voluntarily suffer or permit a creditor who is not an assenting creditor to obtain any preference to or priority over assenting creditors."

"Section 905. This plan and the agreement is an entire contract, each stipulation and obligation being a part of the consideration of every other."

An answer to the bill of complaint was filed by the City, the bill being treated as an intervention in the validation proceedings by order of the court.

The answer of the State attorney in the validation pro-

ceedings contains similar statements to the bill of the taxpayers and also fully avers matters that are designed to show that the issue of the proposed refunding bonds will not conserve the best interests of the City and its taxpayers.

Final decree was rendered as follows:

"This cause came on at ten o'clock A. M. on the 4th day of December, A. D. 1939, in Chambers at the Court House in the City of West Palm Beach in Palm Beach County, Florida, to be heard upon the petition of the City of West Palm Beach in Palm Beach County, Florida, a municipal corporation under the laws of the State of Florida, for the validation by this Court of $1,439,000 par value 'Refunding Bonds, Series G,' described in said petition, and upon the answer of the Respondent, State of Florida, to said petition, and upon the replication of said petitioner which was filed with leave of Court on said date, and said cause came on further to be heard on December 6th, A. D. 1939, upon the Bill of Complaint of John M. Bush, *et als.*, against the City of West Palm Beach, *et al.*, and the Answer of the defendant City of West Palm Beach to said Bill of Complaint, which, by order of this Court pursuant to stipulation of the parties to said cause and of the parties to these proceedings, are to be considered for all purposes as a petition of intervention herein and the reply thereto, respectively, and also upon the evidence adduced in support of said Bill of Complaint or petition of intervention, and argument of counsel for the parties, and the Court has duly considered the same.

"It might be helpful should the court briefly state its conclusions.

"Even though Section 902 of the refunding contract of January 1, 1936, was not merged in or superseded by the refunding bonds issued under that contract and has been

recognized and breached by the City, and even though this provision of the contract was neither void, nor contrary to public policy as an attempt to bind succeeding City Commissions, it does not appear that it is now necessary for the court to determine these particular questions.

"The City Commission has the power and authority to issue these bonds now sought to be validated. In carrying out that power, it has exercised its discretion in working out the details of the proposed refunding operation. As contended by counsel for the City, it is the business of the City Commission to decide whether or not the City should take the chance of being answerable in damages or otherwise to the holders of the refunding bonds under the January 1, 1936, contract.

"The question of the issuance of these refunding bonds, is a matter concerning which, on this record, the court should not interfere with the discretion of the City Commission. Notwithstanding the answer of the State Attorney and the bill of Bush, *et al.,* it cannot now be determined that the ultimate benefit redounding to this community through termination of litigation, stabilization of values and reestablished confidence in the welfare of the City, will not in the long run demonstrate that the action of the City Commission was the best course to follow.

"It is therefore the conclusion of the Court that no irreparable damage is shown by the objecting parties, and that it does not appear that the City Commission has exercised any unreasonable action that materially affects substantial rights of persons or taxpayers, contrary to law. Therefore, the bonds should be validated.

"THEREUPON, IT IS ORDERED, ADJUDGED AND DECREED by the court as follows:

"1. That this court has jurisdiction of the subject matter

of and the parties to this cause, including all citizens and taxpayers of the City of West Palm Beach in Palm Beach County, Florida.

"2. That the objections raised by the answer of the State of Florida, through its State Attorney, as aforesaid, and the objections raised by said John M. Bush, *et al.,* (taxpayers) as aforesaid, be and the same are hereby overruled.

"3. That the City of West Palm Beach in Palm Beach County, Florida, is indebted in the manner and upon the bonds and coupons and judgments upon bonds and coupons referred to in the petition herein and described in the preamble of the resolution annexed to and made a part of said petition and marked Exhibit 1, and for the payment thereof is obligated to the levy taxes without limitation as to rate or amount upon all property within the territorial limits of said City, excepting such property as was exempted from municipal taxation by the Constitution of the State of Florida as it existed immediately prior to November 6, 1934.

"4. That the City of West Palm Beach in Palm Beach County, Florida, has lawful right, power and authority to issue and deliver in exchange for the bonds, coupons and judgments upon bonds and coupons described in the preamble of the certified copy of said resolution annexed to the petition and marked Exhibit 1, a like amount of 'Refunding Bonds, Series G' in the manner more particularly described in said resolution, and for the payment of said 'Refunding Bonds, Series G,' the said City will be obligated to levy taxes upon all property within the present territorial limits of the City of West Palm Beach in Palm Beach County, Florida, at the dates, in the amounts and in the manner prescribed in said resolution which was not exempted from municipal taxation by the Constitution of the

State of Florida, as it existed immediately prior to November 6, 1934.

"5. That it is hereby specifically found, determined and adjudged that all homesteads within the present territorial limits of the said City of West Palm Beach in Palm Beach County, Florida, will be subject to taxation for the payment of said 'Refunding Bonds, Series G' in the manner prescribed by said resolution, a certified copy of which is annexed to the petition and marked Exhibit 1, notwithstanding the provisions of Section 7 of Article X of the Constitution of the State of Florida, and that the taxes and assessments securing the same will not be subject to any legislation enacted by the Legislature of the State of Florida, impairing or modifying the obligations of said City on said 'Refunding Bonds, Series G' or the covenants contained in said resolution and that each and every of the covenants and agreements contained in said resolution is valid and binding upon the said City.

"6. That the 'Refunding Bonds, Series G' authorized by the resolution, a certified copy of which is attached to the petition and marked Exhibit 1, have been duly authorized and that all matters, things, proceedings and conditions necessary to happen, be done, exist and to be performed, precedent to the issuance of said 'Refunding Bonds, Series G' have happened, been done, exist and been performed in due time, form and manner according to law, and that said 'Refunding Bonds, Series G' are hereby validated and confirmed, and the validity thereof shall never hereafter be questioned or contested.

"DONE AND ORDERED, this December 18, A. D. 1939.

"C. E. Chillingworth, Circuit Judge."

The State and the taxpayers appealed.

The law accords to the City Commissioners some ad-

ministrative discretion in the exercise of their statutory municipal authority in issuing refunding bonds and it is not clearly shown that the Commissioners could have refunded the remaining 7 per cent of the original bonds of the city on terms more favorable to the City and its taxpayers, or that the Commissioners have abused the administrative authority conferred upon them by the law. Illegality or fraud is not alleged.

Refunding ·bonds that merely contain the obligation of the original bonds for reduced or extended payments are not required by law to be approved by the electorate. Such approval if given does not afford additional legal effect to the refunding bonds or to the authority for issuing them.

Whatever may be the legal effect of the quoted provision of the contract of January 1, 1936, that "the City will not voluntarily suffer or permit a creditor who is not an assenting creditor to obtain any preference to or priority over assenting creditors" who canceled 75 per cent of the principal of the original bonds exchanged by them for refunding bonds, such agreement cannot operate to prevent the City from exercising its statutory municipal authority to issue refunding bonds in exchange for existing outstanding bonds of the City when it is to the interest of the City and its taxpayers to do so, and no controlling law is violated, even though the present proposed exchange is not as favorable to the City as the former exchange of 93 per cent of its bonded debt, no fraud or illegality being shown. The proposed bonds will reduce interest rates of original bonds not refunded. The charge that the action of the City, taken for issuing the proposed refunding bonds, was arbitrary and capricious and in flagrant violation of the contract of January 1, 1936, with other bondholders, is not sustained by the finding of the chancellor on the record.

No illegality in the proposed refunding bonds is alleged, and the efficient resident chancellor has found and concludes that:

"Notwithstanding the answer of the State Attorney and the bill of Bush, *et al.* (taxpayers), it cannot now be determined that the ultimate benefit redounding to this community through termination of litigation, stabilization of values and reestablished confidence in the welfare of the City, will not in the long run demonstrate that the action of the City Commission was the best course to follow. It is therefore the conclusion of the court that no irreparable damage is shown by the objecting parties, and that it does not appear that the City Commission has. exercised any unreasonable action that materially affects substantial rights of persons or taxpayers, contrary to law. Therefore, the bonds should be validated."

There is in the record sufficient basis for the findings and decree of the chancellor.

Affirmed.

TERRELL, C. J., and WHITFIELD, BUFORD, CHAPMAN and THOMAS, J. J., concur.

Justice BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.